218 F.2d 771
 KOCH-ELLIS MARINE CONTRACTORS, Inc., Claimant of The JOE L.
HILL and The KE 17 and KE 22, Appellant,
v.
SEWERAGE & WATER BOARD OF NEW ORLEANS, and Fidelity &
Guaranty Insurance Corporation, Appellees.
 No. 15029.
 United States Court of Appeals, Fifth Circuit.
 Jan. 28, 1955.
 
 Joseph V. Ferguson, II, New Orleans, La., Cobb & Wright, New Orleans, La., for appellant.
 John H. Eisenhart, Jr., amicus curiae.
 Francis Emmett, Brunswick G. Deutsch, and Deutsch, Kerrigan & Stiles, New Orleans, La., for appellees.
 Before HUTCHESON, Chief Judge, BORAH, Circuit Judge, and DAWKINS, District Judge.
 PER CURIAM.
 
 
 1
 This is an appeal in admiralty from an interlocutory decree, based on findings, Sewerage & Water Board v. The Joe L. Hill, D.C., 118 F.Supp. 951,[1] that unattended, wild and heavily loaded river barges KE17 and KE22, owned by respondent-appellant, collided with and caused damage to a cluster piling and monorail, a part of its River Water Intake Wharf, and that respondent's negligence was the proximate cause thereof.
 
 
 2
 Here, urging upon us that this appeal is a trial de novo[2] and this court must draw its own inferences from the facts, appellant insists that there is no direct evidence whatever, and no circumstantial evidence having sufficient probative force, to show that the barges were in collision with the cluster, and the district court's findings of fact and conclusions of law[3] must be rejected as unsupported supported by the evidence and, therefore, unwarranted.
 
 
 3
 We do not think so. On the contrary, we are of the clear opinion that the case was peculiarly a fact case and that the trial court's findings are well supported. Indeed, we think that the finding 'not proven' which appellant in effect insists is all that the record will support, would have been wholly unwarranted. Matters standing thus, it will serve no useful purpose for us to discuss and analyze the evidence, as it is sufficient to say that, upon the findings and conclusions of the district judge, the decree is affirmed.
 
 
 
 [1]
 (1) The Intake Whart of libelant, Sewerage and Water Board of New Orleans, is located on the left-descending bank of the Mississippi River at the downriver end of Carrollton Bend (MAHP 103.8) and extends out into the river approximately five hundred feet
 (2) On the upriver side of the wharf, and near its river end, there are two clusters of pilings, designated No. 3 and No. 4, that provide protection for the wharf. Cluster No. 4 is nearest the levee and about one hundred feet from the river end of the wharf.
 (3) On January 27, 1950, the Mississippi River was at flood stage, and a swift current of approximately 5 m.p.h. was sweeping into Carrollton Bend and setting into and against the Sewerage and Water Board Wharf and its protective clusters. The current had piled large masses of driftwood in and around the wharf and cluster No. 4.
 (4) At 4:15 o'clock A.M. on January 27, 1950, the watchman stationed on the Sewerage and Water Board Wharf left his post and at the time cluster No. 4 was intact. The watchman returned to the wharf at 5:30 o'clock the same morning and found cluster No. 4 sheered off and floating in the river. There were no eyewitnesses to explain exactly how the damage occurred.
 (5) On January 26, 1950, the Tug Joe L. Hill, owned by respondent, Koch-Ellis Marine Contractors, departed Baton Rouge, Louisiana, pushing four loaded tank barges ahead of her, bound down the Mississippi River for Destrehan, Louisiana.
 (6) On that same day at 11:45 P.M., the Hill left the loaded Steel Tank Barges KE-17 and KE-22 moored to a single tree on the right-descending bank of the Mississippi River at MAHP 123.5 and continued her voyage down-river to Destrehan, Louisiana, with the other two loaded and unidentified tank barges in tow.
 (7) The Hill was forced to moor the Barges KE-17 and KE-22 at MAHP 123.5 because she did not have sufficient engine power properly to control her entire tow of four loaded tank barges under the flood conditions existing on the river at that time.
 (8) The Barges KE-17 and KE-22 were lashed abreast and secured, insufficiently, to a single tree on the right-descending bank of the Mississippi River with one steel cable led from the bitts at the up-river end of the inshore barge. These barges were left unattended when the Hill departed for Destrehan.
 (9) Sometime after the Hill left MAHP 123.5 with the other half of her tow, the Barges KE-17 and KE-22 broke adrift and went downriver.
 (10) At approximately 4 o'clock A.M., on Jan. 27, 1950, the barges KE-17 and KE-22 were sighted, drifting abreast downriver, a few feet off Avondale Marine Ways' 'wet dock' (MAHP 107.8) and this fact was reported shortly thereafter to the Search and Rescue Section of the United States Coast Guard in New Orleans.
 (11) The barges KE-17 and KE-22 were captured in New Orleans harbor off Third Street Wharf (MAHP 97) at approximately 5:55 A.M., Jan. 27, 1950, by the USCG Cutter Hudson, Fire Tug Deluge and Tug Engineer.
 (12) The Barges KE-17 and KE-22 were the only vessels adrift in the Mississippi River and the only vessels in the vicinity of Carrollton Bend between 4:15 and 5:30 o'clock A.M., on Jan. 27, 1950.
 (13) Sometime between 4:15 and 5:30 o'clock A.M., the Barges KE-17 and KE-22 drifted into Carrollton Bend and were carried by the current setting toward the Sewerage and Water Board Wharf into collision with cluster No. 4 at that installation.
 (14) The impact of collision sheered off cluster No. 4 approximately 45 feet from its top and thereafter the Barges KE-17 and KE-22 pushed the broken upper portion of the cluster down river so that it fell against and damaged the mono-rail which ran along the upriver side of the wharf. The Barges KE-17 and KE-22 then continued drifting downriver.
 
 
 [2]
 Mosher v. Parker Bros., 5 Cir., 178 F.2d 419; Socony Vacuum v. Smith, 5 Cir., 179 F.2d 672. But see Colvin v. Kokusai, etc., 5 Cir., 72 F.2d 44; C.J. Dick Towing Co. v. The Leo, 5 Cir., 202 F.2d 850, 852; McAllister v. U.S., 348 U.S. 19, 75 S.Ct. 6
 
 
 [3]
 (1) This court has jurisdiction over the subject-matter of this action, and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1333
 (2) When a moving vessel strikes a stationary structure there is a presumption that the collision occurred through the negligence of the moving vessel; The Granite State, 3 Wall. 310, 1865, 70 U.S. 310, 314, 18 L.Ed. 179; The Clarence P. Howland, 2 Cir., 1926, 16 F.2d 25, 1927 AMC 564; The Crown of Galicia, 2 Cir., 1916, 232 F. 305; William A. Bisso, Jr., v. Inland Waterways Corp., D.C.E.D.La., 114 F.Supp. 713, 1953 AMC 1664 Respondent has failed to overcome this presumption.
 (3) Respondent was negligent in that the Tug Joe L. Hill proceeded on a voyage down the Mississippi River during flood stage with four laden oil barges in tow, without sufficient engine power to control her tow. The Severance, 4 Cir., 152 F.2d 916, 1946 AMC 128, 139; Gilchrist Transp. Co. v. Great Lakes Towing Co., D.C.N.J.1916, 237 F. 432; The J.S.T. Stranahan, D.C.S.D.N.Y.1907, 151 F. 364; The E. T. Williams, D.C.S.E.N.Y.1903, 126 F. 871; Dunn v. The Young America, 8 Fed.Cas.No.4,178, p. 102.
 (4) Respondent was negligent in that the Hill moored the loaded Steel Tank Barges KE-17 and KE-22 to the right descending bank of the Mississippi River (MAHP 123.5) with insufficient lines, and left those barges unattended under the existing high water conditions. Norwich Victory-- Dump Scows 116, 129, 122, 3 Cir., 175 F.2d 556, 1949 AMC 2040; United States v. Carroll Towing Co., 2 Cir., 159 F.2d 169, 1947 AMC 35.
 (5) Respondent's said negligence proximately caused the ensuing collision of the barges with libellant's piling cluster.